UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

Debbie A. Stage o/b/o,
Brian C. McCarty (deceased)

      Plaintiff,

      v.

Carolyn W. Colvin,
Acting Commissioner of Social Security,

      Defendant.

Case No. 2:13-CV-414-JVB-JEM

**OPINION AND ORDER**

Plaintiff Debbie A. Stage seeks judicial review of the final decision of Defendant Carolyn Colvin, Acting Commissioner of Social Security, who denied her applications for Disability Insurance Benefits, Disabled Widow's Benefits, and Supplemental Security Income under the Social Security Act. For the reasons stated below, the Court affirms the decision of the Social Security Administration.

**A. Procedural Background**

Plaintiff protectively filed an application for Disability Insurance Benefits and Disabled Widow's Benefits on January 14, 2011, and Supplemental Security Income on January 25, 2011, alleging the onset of disability on October 15, 2009. (R. at 138–150.) Plaintiff's claims were denied initially and then again upon reconsideration. (R. at 70–77, 80–87.) She requested a hearing in front of an Administrative Law Judge ("ALJ"). (R. at 91–94.) Her hearing was held before ALJ Henry Kramzyk on May 23, 2012. (R. at 30–63.) On June 8, 2012, the ALJ determined that Plaintiff was not disabled

1

under the Social Security Act. (R. at 11–24.) The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (R. at 3–5.)

**B. Factual Background**

**(1)** *Plaintiff's Background and Testimony*

Plaintiff was born in 1958. (R. at 165.) As an adult, she worked several semi-skilled jobs, including cooking/bartending, factory labor, and setting tables/doing dishes at a recreational center. (R. at 178.) Off and on from 1986 until 1991, Plaintiff worked in a labor position at a factory. (R. at 180.) This job required her to use machines, tools, and equipment. (R. at 180.) Then, on and off from 1996 to 2006, Plaintiff worked as a cook and bartender, while her last position before the onset date of disability was setting tables and doing dishes at a recreational center from May to October 2009. (R. at 179, 181.)

During her testimony before the ALJ, Plaintiff stated that she had to quit her job in October 2009 because she "was having a lot of problems keeping up." (R. at 38.) She claimed to have arthritis in her shoulder, hand, hip, spine, and knee, as well as a herniated disk. (R. at 42.) She also struggled to stand for periods of time because of the arthritis in her left hip. (R. at 43.) Plaintiff testified that she is constantly in pain, specifically located in the lower part of her back, hip, leg, and foot. (R. at 43.)

She relies on Vicodin to help with the pain because she believes she is allergic to arthritis medication. (R. at 44.) Plaintiff testified she struggles with walking from her bedroom to the bathroom, but can for the most part comfortably walk thirty to forty feet before having to stop and rest. (R. at 46.) She also cannot stand or sit for more than a few seconds without having to shift position. (R. at 46.) She denied the ability to clean, including dusting, vacuuming, sweeping, and straightening up. (R. at 47.)

**(2)** *Medical Evidence*

In October 2002, Plaintiff was diagnosed with mild degenerative disc disease. (R. at 381.) An x-ray of Plaintiff's hips was done in January 2007, where arthritic changes in her left hip were noted. (R. at 386.) In February 2007, Plaintiff was revealed to have mild disc bulging at L4–L5 and L5–S1 as well as slight degenerative changes in her articular joints. (R. at 384.)

Dr. Kondamuri examined Plaintiff in December 2010, where she complained of low back pain that radiates to her left hip and down her left leg. (R. at 388.) She was confirmed to have a lumbar disc bulge and annular between L5–S1 as well as degenerative disc disease. (R. at 389). Dr. Kondamuri suggested a steroid injection into the site that will relieve a significant portion of her pain. (R. at 390.)

During a visit with Dr. Oni a year later in November 2011, Plaintiff demonstrated a fixed flexion deformity of thirty degrees of the left hip, as well as severe restrictions on active and passive ranges of motion. (R. at 421.) Dr. Oni diagnosed her with moderately severe osteoarthritis in her left hip and suggested a total left hip replacement due to a shortening of her left leg which has resulted from a fixed flexion deformity. (R. at 421, 425.) There is a note that as of January 2012, Plaintiff had not scheduled surgery and was holding off from doing so. (R. at 421.) However, Dr. Oni found no spinal deformities other than slight degenerative disc disease. (R. at 425.)

Plaintiff met with state agency consultant, Dr. Saavedra in March 2011. (R. at 343–47.) Dr. Saavedra noted that she has a slightly hunched posture, but appeared to be comfortable seated. (R. at 345.) He also noted spinal tenderness in the lumbar region with a restricted range of motion. (R. at 346.) Plaintiff had a normal gait, but was unable to stoop and squat, and experienced difficulty when getting

onto the examination table as well as standing from a sitting position. (R. at 346.) No cane had been prescribed. (R. at 346.)

Dr. J. Corcoran, a medical consultant, completed a physical residual functioning capability assessment on March 16, 2011. (R. at 350–57.) He noted that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. (R. at 351.) Plaintiff is able to stand or walk for about six hours in an eight-hour work day as well as sit for about six hours in an eight hour work day. (R. at 351.) Dr. Corcoran noted that Plaintiff is able to occasionally climb ramps, balance, stoop, kneel, and crouch but should never climb ladders or crawl. (R. at 352.)

Plaintiff began to regularly visit nurse practitioner Elizabeth Marcotte in September 2010. (R. at 536.) She visited her monthly before she began to see Dr. Rivera in March 2011 through March 2012. (R. at 442–97.) In March 2012, her chronic problems were noted as: hyperlipidemia, hypertension, obesity, asthma, hypothyroidism, pain in the joint, pelvic region, and thigh, hyperglycemia, osteoarthritis, low back pain, sinusitis, and tobacco abuse. (R. at 442.) She was also on the following medications: Septra DS, ProAir HFA, Flonase, Synthroid, Lisinopril, Vicodin, Micardis, Bactrim, Tylenol-Codeine, Amoxil, Carvedilol, Gemfibrozil, Lisinopril, Mobic, and Ultram. (R. at 443.)

**(3)** *Vocational Expert's Testimony*

Vocational Expert Thomas Grzesik ("VE") testified at Plaintiff's hearing before the ALJ. (R. at 56–63.) The VE classified Plaintiff's previous jobs of clerk, bartender, and waitress as medium and semi-skilled. (R. at 58.) The ALJ provided the VE with two hypotheticals, the first with a claimant with the same age, education, and work experience as Plaintiff who can "lift and carry, push, and pull up to [twenty] pounds occasionally and [ten] pounds frequently," stand or walk for a total of up to six hours a

day, sit for up to a total of six hours a day, never climb ladders but occasionally climb ramps and stairs, occasionally balance, stoop, and crouch, never kneel or crawl, and avoid all hazardous machinery. (R. at 59–60.) The VE determined that she could perform all of her past jobs as described by the DOT, but not as previously performed. (R. at 60.) Instead, Plaintiff could perform light, unskilled jobs such as production assembler, small parts assembler, and electronics worker. (R. at 61.)

The second hypothetical included the same information, but changed the amount of time sitting to six hours per day and standing or walking for up to two hours a day. (R. at 61.) The VE opined that she could not continue any of her past relevant work (R. at 61) nor could she transfer any of her previous skills to an occupation that meets the criteria set forth in the ALJ's second hypothetical. (R. at 62.)

**(4)** *ALJ's Decision*

The ALJ found that Plaintiff was not disabled from October 15, 2009, through the date of the decision. (R. at 15.) The ALJ determined that since the alleged onset date, Plaintiff had several severe impairments: lumbar spine degenerative disc disease; obesity; and osteoarthritis in the left hip. (R. at 17.) However, none of these met the required impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 18.)

The ALJ found that Plaintiff's claims of hypertension, hypothyroidism, hyperlipidemia, osteoporosis, and asthma were well controlled and do not affect her ability to perform basic work activities. (R. at 17.) The ALJ also found that Plaintiff's claims of anxiety and depression are not confirmed by medical evidence and are not medically determinable. (R. at 17–18.) The ALJ concluded that the medical evidence does not indicate more limitations than stated in the RFC and that there are a number of jobs that exist within the national economy that Plaintiff can perform. (R. at 22–23.)

**C. Standard of Review**

Under the Social Security Act, an individual is allowed judicial review of a final decision by the Commissioner of Social Security. 42 U.S.C. § 405(g). When under review, this Court must determine that ALJ's decision was supported substantial evidence and made under the correct legal standard. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is defined as including relevant evidence that a reasonable mind might then accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). It is the duty of the ALJ, and not this Court, to consider facts and the credibility of witnesses, weigh evidence, resolve evidence conflicts, or substitute its own judgment for that of the ALJ. *Perales*, 402 U.S. at 399–400; *Boiles v. Barnhard*, 395 F.3d 421, 425 (7th Cir. 2005); *Cannon v. Apfel*, 213 f.3d 970, 974 (7th Cir. 2000). Judicial review by this Court will ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion", as well as make certain that the agency's findings were accurate in order to provide meaningful judicial review to a claimant. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

**D. Disability Standard**

To qualify for Disability Insurance Benefits, an individual claimant must establish that he or she suffers from and meets a disability listed within the Social Security Act. A disability is "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security

Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) [s]he is not presently employed; (2) [her] impairment is severe; (3) [her] impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) [s]he is not able to perform [her] past relevant work; and (5) [s]he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart,* 357 F.3d 697, 699–700 (7th Cir. 2004). An affirmative answer leads to either the next step, or on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter,* 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it then shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

**E. Analysis**

Plaintiff makes five arguments on appeal: the ALJ failed to (1) consider the impact of Plaintiff's obesity; (2) obtain updated medical opinions in light of new evidence; (3) properly weigh Plaintiff's treating physician's opinion; (4) address the discrepancy between the RFC and Plaintiff's measured stooping ability and; (5) take Plaintiff's credibility assessment into account. (DE 14 at 14, 16, 18, 20, 21.) Finding no error, this Court affirms the ALJ's decision.

**(1)** *The ALJ properly addressed the impact of Plaintiff's obesity.*

Plaintiff claims that the ALJ failed to address the impact that her obesity has on her medical impairments. Obesity is a severe impairment "when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental

ability to do basic work activities." SSR 02-1p. An individual who is both obese and arthritic may experience more pain when standing for periods of time than an individual who is only arthritic. *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004). Plaintiff claims that her antalgic gait was the result of weight-bearing pain, where her gait was shortened on her left side. (DE 14 at 15.)

However, the ALJ did take into account obesity as one of Plaintiff's severe impairments (R. at 17) while further using obesity as a contributing factor when limiting her to "light work with additional postural and environmental limitations." (R. at 21.) The ALJ properly took into account the effect of Plaintiff's obesity in conjunction with her arthritis and addressed it sufficiently in his decision.

**(2)** *The ALJ did not need to obtain an updated medical opinion.*

Plaintiff submitted medical records of Dr. Oni and her treating physician, Dr. Rivera, which contain information relevant to her medical history after her last visit with a state agency physician in May 2011. (R. at 374.) The ALJ's issued his decision more than a year later, on June 8, 2012. (R. at 14–24.) Plaintiff claims that ALJ failed to obtain an updated medical opinion when the records of Dr. Oni and Dr. Rivera were submitted. When there is additional evidence presented that may change an earlier state agency physician's opinion, the ALJ must either call a medical expert, or have the file and claimant re-evaluated for said changes. SSR 96.6p.

The ALR committed no error in foregoing the services of a medical expert or ordering Plaintiff's re-evaluation. Dr. Oni's and Dr. Rivera's records did not contain such information that could have reasonably changed the state agency physician's opinion or would have required an expert's assessment. Rather, the records were largely duplicative of Plaintiff's condition before Plaintiff was evaluated by state agency physician. The records did suggest further degeneration of her discs and degenerative

lumbar spinal stenosis. (R. at 425.) And Dr. Oni also suggested that a total hip replacement was needed due to the severe restriction of Plaintiff's range of motion. (R. at 421.) However, Plaintiff chose not to pursue the surgery at that time. (R. at 421.) She never stated that her inability to have the surgery was due to a lack of insurance or insufficient funds. As the ALJ noted, Dr. Oni's October 2011 findings are substantially similar to the February 2007 exam, despite slight changes in the L4–L5 region, which wasn't as predominant in 2007. (R. at 20, 384, 424–25.) The ALJ also took into account the records of Dr. Rivera. (R. at 442–97.) Dr. Rivera twice noted normal range of motion and muscle strength in December 2011, and when he did notice any tenderness or soreness, encouraged Plaintiff to continue exercise and every day activities. (R. at 20, 455–65.) These records fail to show there was considerable deterioration of Plaintiff's health or ability, so as to require the ALJ to call on a medical expert or to re-evaluate Plaintiff anew by a state agency physician. As for the asthma Plaintiff claims to suffer from, the ALJ does mention the diagnosis but notes it is under control and well treated by medication. (R. at 17.) As such, this is not at issue.

**(3)** *The ALJ properly weighed Plaintiff's treating physician's opinion.*

The ALJ gave the proper amount of weight to Plaintiff's treating physician, Dr. Rivera. A treating physician's opinion about a claimant's impairment should be given controlling weight as long as it is well supported through the records and consistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009). When determining what weight to place on a treating physician's opinion, five factors must be looked at: (1) the length and nature of the treatment relationship; (2) frequency of exam by doctor; (3) physician's specialty; (4) types

of test performed; and (5) the consistency and support for the physician's opinion. 20 C.F.R. §§ 404.1527(d)(2) and 404.927(d)(2).

Beginning in April 2011, Dr. Rivera began to see Plaintiff monthly, including ordering blood tests, MRI's, x-ray's, and a referral to an orthopedic surgeon, who recommended a hip replacement. (R. at 421, 442–497, 545–549). His findings match with Plaintiff's other physicians' opinions of the deterioration of her abilities. (R. at 442–497.) In December 2011, Plaintiff had a relatively normal range of motion, muscle strength, and stability in her extremities. (R. at 20, 455–65.) However, in an updated medical opinion in April 2012, Dr. Rivera opines that Plaintiff is consistently in severe pain and unable to perform activities of daily living; she can sit and stand for only five minutes at one time for less than two hours a day; must elevate her legs; and use a cane to engage in walking. (R. at 22, 544–49.)

The ALJ correctly asserts that, within a short amount of time, there are drastic inconsistencies between treating physician Dr. Rivera's treatment records and his April 2012 RFC of Plaintiff. (R. at 22.) The ALJ found it implausible that Plaintiff deteriorated that quickly between December 2011 and April 2012, using Dr. Rivera's records as evidence to demonstrate she was never ordered to elevate her legs or use a cane until the RFC in April 2012. (R. at 22.) In addition, Plaintiff testified at the hearing that she is able to do more than Dr. Rivera stated in his opinion and that she uses the cane by choice, not by physician's order. (R. at 22, 37–38, 45–47.) Given the stark contradiction of Dr. Rivera's findings, the ALJ sufficiently explained why he placed little weight on Plaintiff's treating physician's opinion.

**(4)** *The ALJ did address a discrepancy between the RFC and Plaintiff's actual stooping ability.*

Plaintiff misinterprets the RFCs of Drs. Saavedra and Corcoran, as they both stated that she could occasionally stoop, kneel, and crouch, but never crawl. (R. at 352.) Plaintiff also admits she can

10

bend at the waist, but cannot squat. (R. at 47.) As such, the ALJ properly addressed the discrepancy between Plaintiff's RFC and her stooping ability.

**(5)** *The ALJ fully assessed Plaintiff's credibility.*

The ALJ did not err in assessing Plaintiff's credibility. An ALJ must subjectively weigh a claimant's complaints, including his or her daily activities; location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, and effectiveness of treatment; and other factors. 20 C.F.R. 404.1529(c)(3). A court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012) (quoting *Skarbeck v. Barnhard*, 390 F.3d 500, 504–05 (7th Cir. 2004)).

The ALJ's decision to place little weight on Plaintiff's credibility is based on inconsistencies between her doctors' records and her testimony where she states she is capable of doing more than her physician's record indicates. (R. at 45–52, 544–49.) For example, Dr. Kondamuri recommended steroid injections in December 2010, but Plaintiff never scheduled or had the procedure. (R. at 389–90.) Plaintiff instead continued to see Dr. Rivera and nurse Marcotte, who noted mild tenderness and simply suggested exercise and stretching. (R. at 359–62.) Dr. Oni also recommended a hip replacement, but Plaintiff once again never scheduled or had the procedure. (R. at 421.) However, her not having the steroid injections or hip replacement did not stem from a lack of insurance or money.

Thus, the ALJ took Plaintiff's credibility into account by sufficiently evaluating her failure to complete suggested medical procedures and testimony which reveals inconsistencies between her suggested and actual capabilities. Based on the evidence, the ALJ properly assessed Plaintiff's credibility when making his decision.

**F. Conclusion**

The Court finds that the ALJ properly addressed all of Plaintiff's concerns and built an accurate and logical bridge from the evidence to his conclusions, thus allowing this Court to meaningfully review his decision.

The Court affirms the decision of the ALJ.

SO ORDERED on March 26, 2015.

                                          s/ Joseph S. Van Bokkelen
                                         JOSEPH S. VAN BOKKELEN
                                         UNITED STATES DISTRICT JUDGE